IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW STACY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 19 C 301 |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Andrew Stacy has sued the United States for medical malpractice arising from the Bureau of Prisons' failure to provide him with hip replacement surgery while he was incarcerated in a federal prison. The suit arises under the Federal Tort Claims Act. The government has moved for summary judgment, primarily based on the FTCA's "discretionary function" exception. It argues that Stacy is challenging BOP's decisions regarding where he should be housed, which it contends is a discretionary matter that is subject to the exception. For the reasons stated below, the Court denies the government's motion.

### Facts

Stacy has suffered from osteoarthritis of the left hip since at least 2008. In March 2015, he entered the Federal Correctional Institution located in Oxford, Wisconsin. BOP medical personnel evaluated his hip condition within his first week of custody. During his time at FCI Oxford, Stacy's hip condition continued to deteriorate. Nurse

practitioner Teresa Nehls evaluated Stacy on November 3, 2015 and requested an orthopedic surgeon consultation for Stacy's hip. On May 19, 2016, after evaluating Stacy and reviewing x-rays, Dr. James Foskett, the consulting orthopedic surgeon, recommended that Stacy undergo total hip replacement surgery within the next month.

The recommended surgery did not take place, however. About three months after Dr. Foskett's recommendation to conduct surgery within a month, Dr. Jason Clark, the acting clinical director at FCI Oxford, approved Stacy for hip replacement surgery. On August 22, 2016, however, Dr. Jeffrey Allen, BOP's medical director, denied a request to transfer Stacy to a different prison as a precursor to the surgery, citing Stacy's projected release date of January 27, 2017. BOP's clinical practice guidelines recommend not scheduling an inmate for hip replacement within eighteen months of the inmate's release date.

In its defense of Stacy's lawsuit, the government contends that Stacy could not undergo hip replacement surgery while at FCI Oxford and instead first would have had to be transferred to a BOP "medical referral center."

Stacy was released from FCI Oxford to a halfway house on November 10, 2017, and he was released from the halfway house on January 27, 2017. He had hip replacement surgery on January 30, 2017 without any complications.

## Discussion

Stacy has sued the government under the FTCA for negligence, citing its failure to provide him hip replacement surgery while he was in custody. He seeks to recover for, among other things, pain he experienced due to the delay in having the surgery done.

2

The government has moved for summary judgment, citing the "discretionary function" exception to liability under the FTCA. The government does *not* contend in its motion that its invocation of the policy against hip replacement within eighteen months of an inmate's release amounted to a discretionary function. Rather, it argues that BOP's decision not to transfer Stacy to a different prison for the surgery constituted a discretionary function.

Generally, the United States has sovereign immunity from suit. *See, e.g., Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018). The FTCA, however, gives federal district courts jurisdiction to hear claims for injuries "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute permits a federal prisoner to sue the government for "personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *Keller v. United States*, 771 F.3d 1021, 1022 (7th Cir. 2014).

Though the United States has waived sovereign immunity through the FTCA, this waiver is "far from absolute," and certain claims are excepted. *Calderon v. United States*. 123 F.3d 947, 948 (7th Cir. 1997). In particular, the government is shielded from liability arising out of "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception is to "prevent judicial 'second guessing' of

legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

Courts use a two-part test to determine whether a particular act or omission falls within the discretionary function exception. First, the act or omission must be discretionary in that it "involved an element of judgment or choice." *Keller*, 771 F.3d at 1023 (citation omitted). This part of the test is not satisfied if the government actor had no "rightful option" other than what was prescribed by the statute, regulation, or policy. *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, the challenged action must have been based on considerations of public policy. *See* Def.'s Mem. in Support of Mot. for Summ. J. at 8 (citing *Gaubert*, 499 U.S. at 322). As the government contends, this part of the test is satisfied "if the discretion is based on social, political, or economic policy considerations." *Id.* (citing *Gaubert*, 499 U.S. at 322). This limitation ensures that the decision in question is "of the kind that the discretionary function exception was designed to shield." *Reynolds*, 549 F.3d at 1112 (quoting *Berkovitz*, 486 U.S. at 537).

The government argues that a decision by prison officials regarding where to house an inmate is "precisely the sort of discretionary act that falls within the discretionary function exception." *Lipsey*, 879 F.3d at 255. That is no doubt so—as *Lipsey* holds—but it does not control this case. Stacy's lawsuit is not a challenge to BOP's decision not to transfer him out of FCI Oxford to another prison. Rather, he challenges BOP's failure to provide him with hip replacement surgery after the surgeon BOP sent him to see said that the surgery should be done within one month. In short, the government is shooting at the wrong target; it can't simply redefine Stacy's claim to

4

fit its preferred defense.

In seeking summary judgment, the government relies in part on *Lipsey*, in which the Seventh Circuit considered a claim under the FTCA that arose from the detention of a pregnant woman named Wenona White.  White failed to self-surrender, and she was arrested and remanded into custody.  She was thirty-five weeks pregnant at the time.  The U.S. Marshals Service arranged for White to be housed at a county jail.  There were complications with White's pregnancy and the ensuing birth, and her child was born with severe disabilities, allegedly due to improper or inadequate medical treatment.  The plaintiff sued non-medical personnel at the county jail, various medical personnel, and the United States.  The claim against the United States was based on the conduct of the Marshals Service—specifically, "the decision by . . . a supervisory deputy marshal, as to where to place White initially, and the subsequent refusal to transfer White from that facility . . . ."  *Lipsey*, 879 F.3d at 254.  In other words, the claim against the United States challenged the propriety of decisions on where to house an imprisoned person.  That is not the case here:  Stacy challenges the failure to provide him that a physician recommended, not his prison placement.

If, despite its attempt to refocus the case on the prison-assignment decision, the government is actually contending that decision not to provide surgery falls within the discretionary function exception, it has not made the case for such a determination.  BOP officials may have exercised an element of discretion or judgment when they decided not to allow the surgery, but that alone is not enough; the second part of the test requires the discretion to be based on social, political, or economic policy considerations—as the government concedes.  *See Gaubert*, 499 U.S. at 322 (cited for

5

this point at Mem. in Support of Def.'s Mot. for Summ. J. at 8 (dkt. no. 46)). Based on the record before the Court, the decision involved *medical* considerations, not considerations of social, political, or economic policy. The term "social, political, or economic policy" is relatively broad, but the government offers no support for the proposition that it is read so broadly as to swallow up medical decision-making.[1] The government cites no authority supporting the proposition that a decision regarding whether to provide medical treatment falls with in the discretionary function exception. The only case it cites, *Gaubert*, involved something completely different, specifically, decisions made by the Federal Home Loan Bank in supervising the management of a financial institution.

For these reasons, the government is not entitled to summary judgment based on the FTCA's discretionary function exception.

In its motion, the government argued in the alternative that Stacy's claim fails because he "cannot put forth sufficient expert evidence to establish a *prima facie* case of medical malpractice." *Id.* at 12. It argued that none of Stacy's witnesses—three physicians who treated him while in custody and after release—offered any "testimony that any BOP personnel breached the standard of care." *Id.* at 14. The government has since withdrawn this argument, *see* Def.'s Reply Mem. at 1, but in fact it was wrong from the outset. Dr. James Foskett, the surgeon who concluded that Stacy should have surgery within thirty days, testified during his deposition that Curtis needed surgery

---

[1] The government makes a passing argument at page 12 of its brief that the BOP's clinical practice guidelines are covered by the discretionary function exception, but for this it cites only *Gaubert*, which did not involve anything having to do with medical care or treatment. The point is forfeited because it is made in such a cursory way, without citation of any supporting authority that is actually pertinent.

promptly because he was in "debilitating pain that could not be controlled otherwise," and thirty days "was a reasonable amount of time to do it *and it shouldn't have been delayed any longer than that*." Def.'s LR 56.1 Stat. ¶ 76 (quoting Foskett Dep. at 54). That was sufficient to permit a reasonable factfinder to conclude that BOP breached the standard of care. Since then, Dr. Foskett has removed any potential doubt about what he concluded, as he has submitted an affidavit attesting, directly, that the failure to schedule surgery within one to two months of his evaluation was a breach of the applicable standard of care. (The submission of this affidavit was the basis for the government's withdrawal of this aspect of its motion for summary judgment.)

Finally, it may be true that Stacy suffered no permanent injury, as the government contends, but recoverable damages in a medical malpractice case include pain and suffering, and a permanent injury is not a prerequisite to a successful claim. The government offers no authority suggesting otherwise. The apparently non-permanent nature of Stacy's pain from the delay in surgical treatment may limit the amount he can recover in this lawsuit, but it does not eliminate his right to relief.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment. The case is set for a status hearing on September 3, 2021 at 9:00 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. The hearing will be by telephone, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

Date: August 27, 2021

_____
MATTHEW F. KENNELLY
United States District Judge