**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW STACY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19 C 301 |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In December 2014, Andrew Stacy pled guilty to one count of bank fraud and was ordered to pay restitution to the victims of the crime in the amount of $1,495,689.60. The United States registered the judgment with the Treasury Offset Program, a Department of Treasury program that helps collect delinquent debts owed to federal agencies. Under the program, the U.S. Treasury withholds funds that would otherwise be paid to an individual by a federal agency and instead applies the funds as a credit to the individual's federal debts.

Following his two-year incarceration, Stacy sued the United States under the Federal Tort Claims Act (FTCA), alleging that Bureau of Prisons employees were negligent in failing to timely approve and perform needed medical treatment. The parties settled the case for $70,000. During settlement negotiations, the United States indicated that the settlement was subject to administrative offset and that, instead of paying it out to Stacy, it would apply the proceeds to his criminal restitution debts.

Evidently this was not known to either side's counsel throughout the litigation until a settlement had been concluded. This is truly unfortunate, as earlier awareness of this important information might have saved a lot of the parties' time and effort.

Stacy has filed a motion asking the Court to find that his FTCA suit settlement is not subject to an administrative offset. For the reasons stated below, the Court denies Stacy's motion.

## Discussion

The Court first addresses its jurisdiction to rule on this issue. A party may sue the United States only in cases where Congress has waived its sovereign immunity. The FTCA provides one such waiver, allowing the United States to be held liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver is what allowed Stacy to bring his tort suit against the government. But, with respect to his current motion, the government contends that the FTCA does not authorize suits against "the United States to enjoin an administrative offset" and thus that the Court lacks jurisdiction to address Stacy's request. Resp. at 3.

The Court disagrees. Section 1346(c) states that the jurisdiction conferred by the FTCA "includes jurisdiction of *any* set-off, counterclaim, or other claim or demand *whatever* on the part of the United States against any plaintiff commencing an action under" the FTCA. 28 U.S.C. § 1346(c) (emphasis added). This section, contrary to the government's contention, is written broadly and includes all cases, like this case, where the United States claims a set-off against an FTCA plaintiff. *See Johnson v. United States*, No. 13 C 2839, 2018 WL 5919475, at *1–2 (N.D. Ill. Nov. 7, 2018).

Having determined that it has jurisdiction to address Stacy's motion, the Court proceeds to do so. Under 31 U.S.C. § 3728(a), the Treasury "shall withhold paying that part of a judgment against the United States Government presented to the [Treasury] that is equal to a debt the plaintiff owes the Government." Additionally, sections 3711 and 3716 state that, "with respect to claims of the United States for money or property arising out of the activities of, or referred to, the agency," "the head of an executive, judicial, or legislative agency may collect the claim by administrative offset." 31 U.S.C. §§ 3711(a), 3716(a). These statutory provisions suggest that the government has the authority to assert an offset against a party who owes criminal restitution.

Stacy argues that these statutory provisions do not apply for several reasons. First, Stacy argues that his criminal restitution is not a "debt that [he] owes the Government"; rather, he contends, he owes restitution to the victims of his crime. But Stacy does not cite any authority for his contention, and cases from other circuits undermine his argument. For example, the Eighth Circuit has held that "[a]n order of restitution . . . is based on the victim's losses, but it is an obligation owed to the government." *United States v. Whitbeck*, 869 F.3d 618, 620 (8th Cir. 2017). Similarly, an Eastern District of Arkansas court, in rejecting the very argument that Stacy makes, found that the plaintiff's restitution debt was owed to the government. *Simpson-El v. United States*, No. 2:12-cv-00004-SWW, 2015 U.S. Dist. LEXIS 160789, at *4 (E.D. Ark. Dec. 1, 2015). Although restitution is for the benefit of the crime victims, it is payable to the government, which collects the payment and then distributes it to the victims. For these reasons, the Court finds that Stacy's restitution is a debt owed to the government.

Second, Stacy argues that the sections do not apply because he is current on his

restitution payments. He compares his situation to that of the plaintiff in *Simpson-El*. In that case, the court found that the plaintiff's debt was not past due, noting that:

> The restitution schedule provided for "[p]ayment of not less than 10% of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of 3 years, to commence 30 days after release from imprisonment to a term of supervision."

*Id.* at *6. Because the plaintiff was current on his payments, the court concluded that administrative offset was not appropriate. In a similar case, the D.C. Circuit held that an administrative offset was not available where the plaintiff was not delinquent in her restitution obligations. *United States v. Hughes*, 813 F.3d 1007, 1011 (D.C. Cir. 2016).

In contrast, the government argues that this case is like *Johnson*, in which the court found that the plaintiff's restitution was due immediately and thus the debt was delinquent. *Johnson*, 2018 WL 5919475, at *3. Most significantly with respect to the question before the Court in Stacy's case, the court in *Johnson* relied upon the fact that the restitution judgment stated that the amounts were "due immediately." *Id.* For these reasons, the court held that the plaintiff's settlement was subject to offset by the government.

Stacy's case is similar to *Johnson*. The judge in his criminal case entered a judgment stating that that his monetary penalties were "due immediately." Dkt. no. 90-1 at 7. The court reiterated this in the "special instructions" section of the order, stating that "[t]he financial obligations are due immediately from any non-exempt assets." *Id.* Although the court provided Stacy with a payment plan, that simply provided a schedule for payment in the event that he could not make the entire payment in full. This is clear from the court's use of the phrases "Otherwise" and "Any balance remaining upon

4

release. . . ." *See id.* Nothing in the court's language suggests that the payment plan superseded his obligation to pay restitution "immediately." *See id.*

Next, Stacy contends that, under the government's interpretation, "every single inmate [who owes restitution] would be deprived of the right to an attorney to represent them in their cases" because any potential settlement or judgment from such cases would be used to pay down the restitution amount, instead of attorney's fees or court costs. Mem. at 4. Stacy further argues that this lack of recourse would allow prison staff to "mistreat, abuse, neglect, and otherwise ignore" inmates with restitution judgments "without regard for the repercussions." *Id.* This is a serious and plausible argument. Unfortunately, however, the Court lacks the authority to ignore or rewrite the statute to take Stacy's point into account. If a statute represents bad policy, it is up to Congress, not the courts, to change it. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). The Court also notes that a federal prisoner in this situation likely has an available remedy for injunctive relief to prevent ongoing violations of his constitutional rights. *See McCarty v. Pitzer*, No. 96-2301, 1997 WL 225869, at *3 (7th Cir. Apr. 30, 1997) (unpublished).

Lastly, Stacy argues that the statutes cited by the government do not apply to cases involving criminal restitution because "[c]riminal restitution is governed by 18 U.S.C. § 3664, which allows the Court, and not any administrative agency, to control criminal restitution." Reply at 3. Stacy contends that the government's interpretation gives the Treasury the power to "amend, alter, compromise, or discharge the restitution debt owed by Plaintiff," which, he contends, is in direct violation of 18 U.S.C. § 3664(c). *Id.* at 4. But 18 U.S.C. § 3664 does not prohibit the government from collecting criminal

5

restitution through administrative offset. In fact, the provision states that "[a]n order of restitution may be enforced by the United States . . . by *all other available and reasonable means*." 18 U.S.C. § 3664(m)(1)(A) (emphasis added).

For these reasons, the Court finds that Stacy's settlement is subject to administrative offset.

Even if the settlement award is subject to an offset, Stacy argues, his attorneys should still be paid under the principles of *quantum meruit*. *Quantum meruit* "is based on the implied promise of a recipient of services to pay for those services that are of value to it and lies where the recipient would be unjustly enriched if it were able to retain the services without paying for them." *Restore Constr. Co. v. Bd. of Educ. of Proviso Twp. High Schs. Dist. 209*, 2020 IL 125133, ¶ 28, 164 N.E.3d 1238, 1245. Stacy's argument is that his lawyers' services provided a benefit in the form of a settlement that satisfies of part of his restitution and that the government should not get this benefit for free. The problem, however, is that the government made no implied promise to Stacy's attorneys to pay for their services. The Court also notes that Stacy himself benefits in the settlement—though perhaps not in the way he hoped—by getting a credit against his restitution obligation.

Lastly, the Court addresses whether Illinois' common fund doctrine mandates payment of attorney's fees in this case. (Stacy did not make this argument, but the Court considers it for purposes of completeness.) Under this doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Wendling v. S. Ill. Hosp. Servs.*, 242 Ill. 2d 261, 265, 950 N.E.2d 646, 648 (2011) (citation and

6

internal quotation marks omitted). The theory here—similar to Stacy's *quantum meruit* argument—is that the government (and the crime victims) obtained via the settlement a fund available for payment of Stacy's restitution.

The Illinois common fund doctrine is most commonly applied "to protect[] attorneys dealing with nonparticipating insurance companies." *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶ 18, 963 N.E.2d 1077, 684. For example, Illinois courts have held that the doctrine applies in insurance subrogation cases where an insured plaintiff sues the tortfeasor for damages and receives a judgment in which the plaintiff's insurance company shares due to its earlier payment of the plaintiff's medical expenses. *Id.* The insurance company must contribute to the attorney's fees when: (1) "the fund was created as a result of legal services the attorney performed"; (2) "the subrogee (e.g., an insurance company) did not participate in the creation of the fund"; and (3) "the subrogee benefited or will benefit from the fund's creation." *Id.*

But cases involving subrogor-subrogee relationships are different from cases like the one before the Court. In the situation just described, the plaintiff is "obligated to pay the subrogee only in the event and to the extent that any net recovery is made." *Powell v. Inghram*, 117 Ill. App. 3d 895, 899, 453 N.E.2d 1163, 1166 (1983). Because the insurance company would have received nothing if not for the attorney's services, the recovery amounts to a benefit to the insurance company—one that the insurance company ought to help pay for. In Stacy's case, however, he is a debtor who is "obligated to pay a debt out of any resources available," regardless of whether he recovers anything in a subsequent lawsuit. *Id.* Thus the creditor (here, the government) does not benefit from the services of the obligor's attorney in the same

way as a subrogee, because the creditor would have been entitled to payment regardless. For this reason, the common fund doctrine does not apply in creditor-debtor cases like this one. *Wendling*, 242 Ill. 2d at 265, 950 N.E.2d at 648 ("Illinois courts have never applied the common fund doctrine to a creditor-debtor relationship . . . .").

## Conclusion

For the foregoing reasons, the Court denies the plaintiff's motion to challenge an administrative offset [dkt. no. 90]. The Court assumes that this resolves the last remaining issue in the case and that the case may now be dismissed with prejudice pursuant to the previously agreed-upon settlement. The parties are directed to file a status report by March 24, 2022 advising whether this is so, and if not, what remains to be done to bring the case to a conclusion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 21, 2022